## GRAHAM *v.* GULLIVER *et al.*

(*Supreme Court, General Term, First Department.* January 28, 1889.)

EXECUTORS AND ADMINISTRATORS—ALLOWANCE OF DEMANDS—EVIDENCE.

A claim was presented against intestate's estate for desk-room at claimant's store, and for services rendered intestate. The latter for many years had his desk in the store, first of claimant and his partner, and, after their dissolution, in that of claimant himself. Their relations were intimate, and claimant, his partner and clerks, rendered him services in the management of his business. They also had financial transactions, which were closed, and not in controversy. Intestate stated to different persons that he moved his desk and business to that place to save expense. In the accounts kept by claimant no charge was made against intestate for desk-room or services, nor in any of their correspondence about their dealings were those items referred to, and on one occasion claimant asked intestate for a loan of a large amount, when an equal sum would have been due him according to the theory on which his claim was presented. The relations of the parties were intimate and confidential, and intestate also rendered the claimant services. The claimant testified that it was agreed between them that the amount intestate should pay was to be left to himself, which accounted for the fact that no entries on the books were made. *Held*, that the evidence justified a finding by the referee adverse to the claim.

Appeal from special term, New York county.

John H. Graham presented to William C. Gulliver, administrator, and Maria H. Hotchkiss, administratrix, a claim against the estate of Benjamin B. Hotchkiss, deceased, which was reported adversely by the referee. Judgment was rendered dismissing the claim, from which, and from an order denying a motion to set aside the report, the claimant appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and DANIELS, JJ.

F. C. Reed, for appellant. James G. Janeway, for respondents.

DANIELS, J. The reference was ordered on a stipulation of the parties for the hearing and determination of a claim for services and desk-room, made by the appellant against the estate of the intestate. The intestate was engaged in business, and employed the greater part of his time in Paris, in France; and the appellant and his partner carried on business at 113 Chamber street, in the city of New York, until the dissolution of the firm, and after that the same business was continued by himself alone. From April, 1877, to February, 1885, when the intestate departed this life, he had his desk in the office, first of the firm of Graham & Haines, and, from their dissolution, in the office of Graham alone. And both Graham, and Graham & Haines, and their clerks, devoted their attention and services to business of the intestate, from time to time transacted at this store. He was in New York for several months during each of these years, with the exception of one year,— that of 1881. And while he was there he made use of the desk and the desk-room in the office, so far as it was requisite in the course of his business, and while he was away from the city of New York his letters were received at the store, and opened and answered by persons in its employment. And letters were written also for him, in like manner, concerning different occurrences in the course of the transaction of his business. There were also financial transactions, in which the claimant and his partner, and the claimant himself, advanced moneys for the intestate from time to time, and held his notes, and exhibited an artillery gun kept for him in the store for exhibition and inspection. So far as the financial transactions extended, they were wholly settled and adjusted between the parties, with the exception of three demands after the 14th of February, 1885, and they were withdrawn from the hearing before the referee. No claim was made by the appellant, either on his own account directly or as the assignee and successor of the firm of Graham & Haines, for moneys which had been expended and used in the business of the intestate; but the claim was wholly confined to what was charged as a compensation for the use of the desk-room, and the services performed by the firm, and afterwards by Graham and their clerks, in the business of the intestate.

It appeared upon the trial, from the testimony of a number of witnesses uninterested in the controversy, that in the course of conversations had at different times with them by the intestate he had stated to them that he moved his desk and this business to the store of this firm for the reason that it would be less expensive to himself than the place had been where he had previously been located. The conversations which took place, and which are to be accepted as proved by the testimony of these witnesses, maintain the fact to be that the intestate intended to remunerate this firm for the accommodations and services in this manner secured by him. But it is equally as clear from the other evidence given upon the trial that there was no definite understanding whatever as to the extent or the amount of the compensation which should be made. And as the intestate himself was in the habit of rendering services for the firm, and this succeeding member of it, the referee has concluded that there was no design on his or their part to make any further claim for compensation than such as was derived in this manner. The parties appear to have sustained very friendly relations to each other; the intestate, in the conversations which have been referred to, mentioning Graham & Haines

as his boys, whom he had brought up in the business. And the correspond-ence, which was at great length read upon the trial, is a still further evidence that the relations between these persons were in an unusual degree friendly and confidential.

The business which proceeded in this manner, and the desk-room occupied by the intestate in the office of the store, extended over a period of nearly-eight years. And both the firm of Graham & Haines, during its continuance, and Graham, as its successor, had an account upon their books with the in-testate, charging and crediting the moneys expended and received in his busi-ness. And on the 9th of March, 1883, an account was rendered by the firm of Graham & Haines to the intestate of these transactions, but no reference whatever was made to any charge for desk-room, or for the services which had been rendered for the intestate in his business going to the store. But this account was accompanied with a letter written by Mr. Haines,—one of the members of the firm,—in which, after referring to a statement of account received from the intestate, he said: "I have now had drawn off a complete statement of our account against you as it stands on our books. Have given you credit as per your statement, less forty dollars, with which we had pre-viously credited you, and trust you will find this correct." This account, as well as the statement contained in the letter, indicated the conviction of the writer to be that in some unexplained mode the value of the desk-room, and of the services performed at the store and elsewhere in the business of the in-testate, had been otherwise provided for and adjusted in the course of the transactions of these parties. And that this may have been the fact is fur-ther evinced by the circumstance that no entry during the life-time of the in-testate, was made upon the books either of Graham & Haines, or of Graham, their successor, making any charge whatever to the intestate on account of the desk-room, or of these services. It was not contended that any payment had in fact been made by him to either of these persons; but it has been as-sumed that the services and accommodations on his part rendered for and ex-tended to them satisfied them for what they did in this manner for him; and this conclusion was further very materially supported by the letter of Graham himself to the intestate written on the 8th of April, 1884. The time had then nearly arrived for making a change in the business of Graham & Haines, and the former was disposed to buy out his partner, as he afterwards did, and go on with the business on his own account. In this letter a statement of the proceeds or profits of the business was made from the year 1870 to July 1, 1883, showing the business in each year to have been profitable and remu-nerative. But no intimation was given whatever that there was any out-standing demand to be added to the results of the business on account of this desk-room and these services. The statement was made as evidence of the fact that money might be loaned by the intestate to Graham, to enable him to buy out his partner, without any risk whatever to the former. And in this letter, after disclosing the necessity for obtaining financial aid, the writer, Mr. Graham, added: "At present I do not know who to go to, and I don't think I have any claims on you but friendship. * * * 1 suppose I would need ten to fifteen thousand for three years, to make it easy payments for the business. I would like to know what you think of it. I can give some se-curity through my wife. I would like to regard this letter as confidential. If you would be willing to venture the loan, please cable me personally," etc. If the claim which was made against the estate was well founded in fact, then the intestate would have been at this time indebted to Graham & Haines in an amount equaling the greater proportion of this proposed loan; and it would have been most natural for Graham to have referred to that fact, and suggested a payment of that account, if in truth it had any foundation what-ever as a demand in favor of this firm. But so far from anything of that kind being done, the letter was, as all preceding correspondence had been, en-

tirely silent as to this demand, and in no way whatever suggested even a supposition on the part of Mr. Graham, the writer, that the firm had or could make the claim, or any part of it, which was presented to the administrators of the estate against the intestate himself. In his own evidence as a witness, which he was permitted to give quite broadly, he stated that the understanding or arrangement between the firm and the intestate when he moved his desk to the store was that the amount of the compensation which was to be made should be left to the intestate himself. That is the reason assigned by the claimant for the omission to make any charge upon the books or in the account, or any reference in these letters to the compensation he testified they expected to receive. But even this explanation could not be entirely satisfactory when it is borne in mind that if any compensation whatever was owing to the firm it had then matured for the accommodation extended and the services performed during the period of near seven years. But if this circumstance should have no weight or effect in the disposition of the case, the explanation and excuse disclosed in this manner depended wholly upon the testimony of Mr. Graham; and that was in no sense controlling or conclusive upon the referee, for, where testimony is obtained from a party to a legal controversy, either a referee or jury may discredit and reject it on account of the intent of the person from whom it is obtained. *Elwood* v. *Telegraph Co.*, 45 N. Y. 549; *Gildersleeve* v. *Landon*, 73 N. Y. 609; *Honegger* v. *Wettstein*, 94 N. Y. 253, 261. The referee was therefore supported in his conclusion by which he declined to be governed by this testimony.

There were no rulings during the course of the trial, either upon evidence received or rejected, which can be relied upon as erroneous. The case, on the contrary, is presented in support of the appeals upon the effect alone of the evidence taken upon the trial. And the probabilities to be deduced from this evidence were so far favorable to this estate as to support the conclusion adopted by the referee that the claim made was without foundation. Both the judgment and the order denying the motion to set aside the report should be affirmed, with costs. All concur.